IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| _____ | |
| SYNYGY, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | :   Civil Action No. 07-3536 |
| NOVO NORDISK, INC. f/k/a NOVO | : |
| NORDISK PHARMACEUTICALS, INC., | : |
| | : |
| ZS ASSOCIATES, INC., | : |
| | : |
| Defendants. | : |
| _____ | : |
| ZS ASSOCIATES, INC., | : |
| | : |
| Counterclaim-plaintiff, | : |
| | : |
| v. | : |
| | : |
| SYNYGY, INC., | : |
| | : |
| Counterclaim-defendant. | : |
| _____ | : |

**ZS ASSOCIATES, INC.'S ANSWER AND COUNTERCLAIMS TO
SYNYGY, INC.'S SECOND AMENDED COMPLAINT**

Defendant ZS Associates, Inc. ("ZS") Answers Plaintiff Synygy, Inc.'s ("Synygy")

Second Amended Complaint as follows:

***Jurisdiction and Venue***

1.      Admitted in part and denied in part.  ZS admits that Synygy purports to bring this

action pursuant to the Copyright Act.  The remaining allegations in this paragraph call for a legal

conclusion to which no response is required.  Therefore, they are denied.

14064201.13

2.      Admitted in part and denied in part.  ZS admits that Synygy purports to bring this action pursuant to the Lanham Act.  The remaining allegations in this paragraph call for a legal conclusion to which no response is required.  Therefore, they are denied.

3.      Admitted in part and denied in part.  ZS admits that Synygy seeks damages in excess of $75,000, exclusive of interest and costs.  ZS admits upon information and belief that the parties in this case are citizens of different states.  ZS denies all remaining allegations in this paragraph.

4.      Denied.  The allegations of this paragraph call for a legal conclusion to which no response is required.  Therefore, they are denied.

5.      Denied.  The allegations of this paragraph call for a legal conclusion to which no response is required.  Therefore, they are denied.

***The Parties***

6.      Admitted upon information and belief.

7.      Admitted upon information and belief.

8.      Admitted in part and denied in part.  ZS admits that ZS Associates, Inc. is an Illinois corporation with its principal place of business in Illinois and that it also maintains offices located at One Liberty Place, 1650 Market Street, Suite 1350, Philadelphia, Pennsylvania and at 150 College Road West, Suite 300 Princeton, New Jersey 08540.  ZS also admits that one or more of its affiliated entities has offices in Pune, India and other international locations.  The remaining allegations in this paragraph are denied.

9.      Admitted in part and denied in part. ZS admits that it operates in conjunction and coordination with its direct or indirect affiliates, which include ZS Associates International, Inc.

- 2 -

("ZSAI"), ZS Associates India Pvt. Ltd. ("ZS India"), and ZS Associates, Enterprise

Management Consulting, Shanghai, Limited.  The remaining allegations in this paragraph are

denied.

<u>**Synygy**</u>

10.      Admitted in part and denied in part.  ZS admits upon information and belief that

Synygy is a software and services company that provides certain sales compensation

management and sales performance management software and services to clients.  ZS is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in this paragraph.  Therefore, they are denied.

11.      Admitted in part and denied in part.  Admitted upon information and belief that

Synygy provides at least some of its clients with such software and services.  ZS is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in this paragraph.  Therefore, they are denied.

12.      Admitted in part and denied in part.  Admitted upon information and belief that

Synygy provides at least some of its clients with software hosting and sales compensation plan

management services.  It is also admitted upon information and belief that Synygy utilizes

computerized spreadsheets, reports, and other software in providing at least some of these

services to its clients.  ZS is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

13.       Denied.  ZS is without knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

14.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

15.     Admitted in part and denied in part.  ZS admits that Synygy has software products.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, including the names of any particular software products.  Therefore, they are denied.

16.     Admitted in part and denied in part.  ZS admits that Synygy offers software products and services.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, including the arrangements under which Synygy provides its software products and services to clients or the location of Synygy's clients.  Therefore, they are denied.

17.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

18.     Denied. ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

19.     Denied.

20.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

21.     Denied.

22.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

23.     Admitted in part and denied in part.  ZS admits that Synygy and its affiliates have required at least some employees to sign some form of confidentiality and/or non-competition agreements.  As for the purported terms of those agreements, they speak for themselves.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

24.     Admitted in part and denied in part.  ZS admits that Synygy and its affiliates have required at least some employees to sign some form of confidentiality and/or non-competition agreements.  As for the purported terms of those agreements, they speak for themselves.  ZS denies the remaining allegations set forth in this paragraph.

## ZS

25.     Admitted that ZS is a global management consulting firm specializing in sales and marketing strategy, operations, and execution that, among other things, provides software and services for managing sales compensation, sales quotas, sales objectives, and other sales processes.

26.     Denied.

27.     Admitted in part and denied in part.  ZS admits that among its clients are corporations that employ more than 100 salespeople, in a number of industries including the financial, pharmaceutical and biotech industries.  ZS denies the remaining allegations set forth in this paragraph.

28.     Admitted.

29.     Admitted in part and denied in part.  ZS admits that it and entities affiliated with it sell services and license software products globally.  The remaining allegations in this paragraph are denied.

30.     Admitted in part and denied in part.  ZS admits that it conducts business with its affiliates and that its affiliates provide certain technical and professional support services to ZS.  ZS denies any remaining allegations set forth in this paragraph.

31.     Denied.

***Synygy and ZS Are Global Competitors***

32.     Admitted in part and denied in part.  ZS admits that it and, upon information and belief, Synygy license software products, and that ZS does so globally.  ZS also admits that it and Synygy are direct competitors in certain ways.  ZS is without information as to whether Synygy sells software and services globally and denies any remaining allegations set forth in this paragraph.

33.     Admitted in part and denied in part.  ZS admits that Synygy and ZS both provide software and services for managing sales compensation, sales quotas, and sales objectives and that ZS and Synygy compete in certain ways.  ZS is without information as to the meaning of the phrase "global SPM market" so as to form a belief as to the truth of that or the remaining allegations set forth in this paragraph.  Therefore, they are denied.

34.     Admitted in part and denied in part.  ZS admits that it and Synygy compete in providing software and services for managing sales compensation, sales quotas, and sales objectives.  ZS is without information as to the meaning of the phrase "global SPM market" so as

to form a belief as to the truth of that or the remaining allegations set forth in this paragraph. Therefore, they are denied.

35.     Admitted in part and denied in part.  ZS admits that it produces some software products that directly compete with some Synygy software products.  ZS denies the remaining allegations set forth in this paragraph.

36.     Denied.  To the extent that Synygy's allegations are based on a purported written document, the document speaks for itself.  ZS denies any remaining allegations set forth in this paragraph.

37.     Denied.  ZS services in this area predate the formation of Synygy.  To the extent that Synygy's allegations are based on purported written documents, those documents speak for themselves.  ZS denies any remaining allegations set forth in this paragraph.

***Facts Common to All Claims***

38.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

39.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.

40.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

41.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

42.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required, and they are otherwise denied.

*Synygy's Relationship with Novo*

43.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  To the extent that Synygy's allegations are based on a purported written agreement, the agreement speaks for itself.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.

44.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  To the extent that Synygy's allegations are based on a purported written agreement, the agreement speaks for itself.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

45.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  To the extent that Synygy's allegations are based on purported written agreements, those agreements speak for themselves. ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

46.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  To the extent that Synygy's allegations are based on purported written agreements, those agreements speak for themselves. ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

47.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  To the extent that Synygy's allegations are based on purported written agreements, those agreements speak for themselves. ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

48.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  To the extent that Synygy's allegations are based on purported written agreements, those agreements speak for themselves. ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

49.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  To the extent that Synygy's allegations are based on purported written agreements, those agreements speak for themselves. ZS is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in this paragraph.  Therefore, they are denied.

50.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  To the extent that Synygy's allegations are based on purported written agreements, those agreements speak for themselves.  ZS is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in this paragraph.  Therefore, they are denied.

51.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  To the extent that Synygy's allegations are based on purported written agreements, those agreements speak for themselves.

52.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

53.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

54.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.

55.     Denied.  To the extent that Synygy's allegations are based on purported written documents, those documents speak for themselves.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the remainder of this paragraph.  Therefore, they are denied.

56.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

57.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

58.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

59.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Admitted.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

68.     Denied.

69.     Denied.

70.     Admitted upon information and belief.

71.     Admitted upon information and belief.

72.     Admitted upon information and belief.

73.     Admitted upon information and belief.

74.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

75.     Denied.

76.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.

77.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

78.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  To the extent that Synygy's allegations are based on a purported written agreement, the agreement speaks for itself.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

79.     Admitted in part and denied in part.  ZS admits upon information and belief that Novo hired ZS to perform certain incentive compensation administration services, some of which Synygy previously performed for Novo.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS denies the remaining allegations in this paragraph.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS denies the remaining allegations in this paragraph.

87.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

88.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  Therefore, they are denied.

89.     Denied.  ZS is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.  To the extent that Synygy's allegations are based on a purported written agreement, the agreement speaks for itself.  Therefore, they are denied.

90.     Denied.

91.     Denied.

92.     Denied.

***Count I — Copyright Infringement***
***Synygy v. All Defendants***

93.     The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

*Count II — Misappropriation of Trade Secrets Under New Jersey Common Law*
*Synygy v. All Defendants*

98.     The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

99.     Admitted in part and denied in part.  ZS admits that Synygy purports to bring this action for injunctive relief and monetary damages for misappropriation of trade secrets.  The remaining allegations in this paragraph call for a legal conclusion to which no response is required.  Therefore, they are denied.  ZS denies all remaining allegations in this paragraph.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.

106.    Denied.

*Count III — Violation of Pennsylvania Uniform Trade Secrets Act*, **12 Pa.C.S.A. § 5301,**
*et seq.*
*Synygy v. All Defendants*

107.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

108.    Admitted in part and denied in part.  ZS admits that Synygy purports to bring this action for injunctive relief and monetary damages for misappropriation of trade secrets.  The

- 14 -

remaining allegations in this paragraph call for a legal conclusion to which no response is required.  Therefore, they are denied.  ZS denies any remaining allegations in this paragraph.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

***Count IV — Violation of New Jersey Fair Trade Act, N.J.S.A. §§56:4-1, et seq.***
***Synygy v. All Defendants***

116.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

117.    Admitted in part and denied in part.  ZS admits that Synygy purports to bring this action pursuant to the Fair Trade Act.  The remaining allegations in this paragraph call for a legal conclusion to which no response is required.  Therefore, they are denied.  ZS denies all remaining allegations in this paragraph.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.

122.    Denied.

123.    Denied.

**Count V — Unfair Competition Under New Jersey Common Law**
**Synygy v. All Defendants**

124.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety

as if set forth in full.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.  To the extent that the allegations of this paragraph contain a legal

conclusion, no response is required.

130.    Denied.

**Count VI — Breach of Contract (Novo Contract)**
**Synygy v. Novo**

131.    No Answer is required, because this Count is against Novo only.

132.    No Answer is required, because this Count is against Novo only.

133.    No Answer is required, because this Count is against Novo only.

134.    No Answer is required, because this Count is against Novo only.

135.    No Answer is required, because this Count is against Novo only.

136.    No Answer is required, because this Count is against Novo only.

137.    No Answer is required, because this Count is against Novo only.

*Count VII — Tortious Interference with Existing and Prospective Contractual Relations*
*Synygy v. ZS*

138.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

139.    Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  To the extent that Synygy's allegations are based on a purported written agreement, the agreement speaks for itself.  ZS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  Therefore, they are denied.

140.    Admitted in part and denied in part.  ZS admits that it knew that Novo had conducted business with Synygy, but denies that it knew of the specific contract that Synygy alleges.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS denies all remaining allegations in this paragraph.

141.    Denied.

142.    Denied.

143.    Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.

144.    Denied.

*Count VIII — Lanham Act Violations (15 U.S.C. §1125(a))*
*Synygy v. ZS*

145.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

- 17 -

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

**Count IX — Tortious Interference with Existing and Prospective Economic Advantage**
**Synygy v. ZS**

150.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

151.    Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS denies all remaining allegations in this paragraph.

152.    Admitted in part and denied in part.  ZS admits that it knew that Schering-Plough had conducted business with Synygy, but denies that it knew of the specific contractual relationship that Synygy alleges.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS denies all remaining allegations in this paragraph.

153.    Denied.

154.    Denied.

155.    Denied.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.

156.    Denied.

*Count X — Conversion of Intellectual Property*
*Synygy v. ZS*

    157.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

    158.    Denied.

    159.    Denied.

*Count XI — Intentional Interference with Actual and Prospective Contractual Relations*
*Synygy v. ZS*

    160.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

    161.    Denied.

    162.    Denied.

    163.    Denied.

*Count XII — Unjust Enrichment/Quantum Meruit*
*Synygy v. ZS*

    164.    The foregoing paragraphs of ZS' Answer are incorporated herein in their entirety as if set forth in full.

    165.    Denied.

    166.    Denied.

    167.    Denied.

    168.    Admitted in part and denied in part.  ZS admits that it has never compensated Synygy, because ZS has never received any benefit from Synygy.  To the extent that the allegations of this paragraph contain a legal conclusion, no response is required.  Therefore, they are denied.  ZS denies all remaining allegations in this paragraph.

169.    Denied.

***Prayer for Relief:***

WHEREFORE, ZS prays that the Court deny all of Plaintiff's requested relief and find in favor of Defendants on all Counts.

## **AFFIRMATIVE DEFENSES**

***First Affirmative Defense:***

Plaintiff fails to state a claim against ZS upon which relief may be granted.

***Second Affirmative Defense:***

Plaintiff's claims against ZS are barred, in whole or in part, because the applicable statutes of limitation have run.

***Third Affirmative Defense:***

Plaintiff's claims against ZS are barred, in whole or in part, by the doctrines of laches, reliance, estoppel and/or waiver, and the terms of the Copyright Act.

***Fourth Affirmative Defense:***

Plaintiff has released, abandoned, acquiesced or otherwise forfeited any and all rights and claims described in the Second Amended Complaint that it may have possessed.

***Fifth Affirmative Defense:***

Plaintiff's claims for equitable and/or injunctive relief against ZS are barred by the doctrines of *in pari delicto* and/or unclean hands.

***Sixth Affirmative Defense:***

Plaintiff's claims are barred because ZS' actions were justified and/or privileged under the law.

**Seventh Affirmative Defense:**

Plaintiff's claims are preempted under the Copyright Act and/or barred by the doctrine of preemption.

**Eighth Affirmative Defense:**

Any purported copyrights that ZS allegedly infringed are invalid and/or unenforceable because the material that Plaintiff alleges that ZS infringed is not copyrightable and/or is not registered.

**Ninth Affirmative Defense:**

Plaintiff's copyrights are invalid and/or unenforceable because Plaintiff has engaged in inequitable conduct (fraud on the Copyright Office).

**Tenth Affirmative Defense:**

ZS has not infringed Plaintiff's copyrights because any use of Synygy's copyrighted material by ZS constituted fair use.

**Eleventh Affirmative Defense:**

ZS has not infringed Plaintiff's copyrights because any use of Synygy's copyrighted material by ZS constituted *de minimis* use.

**Twelfth Affirmative Defense:**

ZS has an implied license to use Synygy's purportedly copyrighted material.

**Thirteenth Affirmative Defense:**

Plaintiff's claims are barred, in whole or in part, because any injuries sustained by Plaintiff were the result of, and/or exacerbated by, its own acts and omissions.

*Fourteenth Affirmative Defense:*

Plaintiff's claims are barred, in whole or in part, because any injuries sustained by Plaintiff were the result of the intervening or superseding conduct of third parties.

*Fifteenth Affirmative Defense:*

Plaintiff's claims are barred, in whole or in part, by the doctrine of contributory and/or comparative fault, because Plaintiff's own actions or failures to act helped to bring about any injuries sustained.

*Sixteenth Affirmative Defense:*

Plaintiff's unjust enrichment/*quantum meruit* claims are barred, in whole or in part, because ZS did not use or retain any benefits that it may have received and Plaintiff has an adequate remedy at law.

*Seventeenth Affirmative Defense:*

Any and all actions taken by ZS with respect to the matters alleged in the Second Amended Complaint were taken in good faith and any purported violation of Plaintiff's rights was caused by accident or the mistakes of third parties.

*Eighteenth Affirmative Defense:*

To the extent that any of Plaintiff's contract-related claims are not based on a written agreement, such claims are barred in whole or in part by the Statute of Frauds.

*Nineteenth Affirmative Defense:*

Plaintiff's contract-related claims are barred in whole or in part because of Plaintiff's breach of contract.

***Twentieth Affirmative Defense***

Plaintiff is not entitled to injunctive relief because any alleged injury to Plaintiff is not immediate or irreparable, and Plaintiff has an adequate remedy at law.

***Twenty-First Affirmative Defense***

Plaintiff has misused any copyright interest it may have on the purportedly copyrighted material.


WHEREFORE, ZS respectfully requests that the Court:  (1) dismiss the Second Amended Complaint;  (2) find in favor of ZS on all Counts and enter judgment on its behalf; (3) award ZS its costs of defending this action, including its reasonable attorneys' fees; and (4) award ZS such other and further relief as the Court may deem just and proper.

## COUNTERCLAIMS

1.      Defendant/Counterclaim-plaintiff ZS Associates, Inc. ("ZS") hereby asserts the following Counterclaims against Plaintiff/Counterclaim-defendant Synygy, Inc.

***The Parties***

2.      Plaintiff ZS is a private corporation, organized under the laws of Illinois, with its headquarters located at 1800 Sherman Ave., Suite 700, Evanston, Illinois 60201.

3.      ZS was founded in 1983 by two professors of marketing from the Kellogg School of Management at Northwestern University, named Andris A. Zoltners, PhD and Prabhakant Sinha, PhD.

4.      Professor Zoltners has been a member of the faculty at Northwestern for more than 30 years, has co-authored a series of books on sales force management, written more than 40 academic articles, and edited two books on Marketing Models.

5.      His colleague, Dr. Sinha, is a former Associate Professor of Marketing, Kellogg School of Management at Northwestern and co-authored many articles and books with Professor Zoltners.  They founded ZS based on work they conducted at Northwestern and other institutions, applying their academic studies of sales and marketing dynamics to industry.

6.      Nearly thirty years later, ZS with its affiliates employ more than a thousand individuals and assists primarily commercial organizations with a wide variety of sales and marketing issues such as sales force design and deployment; incentive compensation design and administration; customer targeting, marketing strategy, measurement and evaluation; outsourced service and capability building; business intelligence; market research; forecasting; pricing; sales force training and customer communication.

7.      Among other things, ZS provides global incentive compensation consulting, administration and software services ("IC Services").  IC Services is a key element in directing and motivating a company's sales force through an efficient and accurate administration of incentives and goals.

8.      Upon information and belief, Defendant Synygy is a Pennsylvania corporation with its principal place of business located at 2501 Seaport Drive, Chester, Pennsylvania 19013.

9.      Synygy was founded many years after ZS, in 1991.

10.     Synygy's founder, President, and CEO—Mark A. Stiffler ("Stiffler")—attended two seminars taught by Professor Zoltners at Northwestern on incentive compensation in the 1990's.

11.     Today, ZS and Synygy compete in providing certain incentive compensation consulting, administration and software services.  ZS also provides other sales and marketing services, which Synygy generally does not offer, to some of the same client companies to which Synygy provides incentive compensation services.

***Jurisdiction and Venue***

12.     ZS brings these claims pursuant to this Court's subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367.  This Court has original federal question jurisdiction over ZS' Lanham Act claim under 28 U.S.C. § 1331.  This Court has diversity jurisdiction over ZS' state law claims under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and ZS is a citizen of Illinois, while Synygy, upon information and belief, is not a citizen of Illinois.  This Court also has supplemental jurisdiction over ZS'

state law claims under 28 U.S.C. § 1367 because they are intertwined with and arise from the

same common nucleus of operative fact as ZS' Lanham Act claim.

13.     The Court has personal jurisdiction over Synygy because it is a Pennsylvania

corporation with its principal place of business located at 2501 Seaport Drive, Chester,

Pennsylvania 19013.

14.     Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. §

1391(a).

## Count I:  Defamation

15.     ZS repeats the allegations set forth in all of the foregoing paragraphs of its

Counterclaims as though set forth at length herein.

16.     Synygy filed an Amended Complaint in this action, *Synygy, Inc. v. Novo Nordisk,

et al.*, Civil Action No. 07-3536, on August 5, 2009 alleging, *inter alia*, that ZS and its affiliates

committed various torts, which purportedly harmed Synygy.

17.     Synygy, through Stiffler, made the following statements to the public on August

6, 2009:

> Synygy created the market for sales compensation management (SCM) software
> and services more than 18 years ago.  We have invested many years and a lot of
> money in product development, which led to Synygy creating the SCM software
> that has propelled our success year after year.  Our intellectual property is a very
> valuable asset and we are firmly committed to protecting it.
>
> The lawsuit we filed today contends that ZS knowingly copied our software and
> other confidential information with the intent to use our intellectual property in
> direct competition with us.  Our position is that ZS continues to use our software
> and other confidential information, causing us to lose substantial revenue, profit,
> and company valuation, while they profit from its use.  There is no way we can
> fully recover what we have lost from what we contend was deliberate and
> malicious misconduct, but we urge the Court to restrain ZS from continuing to

- 26 -

infringe on our intellectual property and to award Synygy damages as the Court deems appropriate.

18.     Stiffler made these statements in his capacity as Synygy's President and CEO and on behalf of Synygy.

19.     By issuing the press release, Synygy made, adopted, published, disseminated, distributed, and repeated all of these statements.

20.     Moreover, upon information and belief, Synygy maliciously and intentionally published and/or directed certain third parties to publish and distribute these statements to the public through various means, such as the Internet and press releases.  A true and correct copy of Synygy's press release, which was downloaded from Synygy's website on August 19, 2010, is attached as Exhibit A.

21.     Upon information and belief, Synygy widely distributed these defamatory statements to the public through the Internet and various media outlets, including but not limited to Reuters®, Yahoo!® Finance, and Intellectual Property Today.  *See* Exhibits B, C & D.

22.     Synygy's statements and implications are materially false, misleading, and defamatory.

23.     In particular, and among other things, the defamatory statements and implications falsely assert that ZS engaged in "deliberate and malicious misconduct" in its business practices by unlawfully using Synygy's software, intellectual property, and other confidential business information to compete with Synygy.  The defamatory statements and implications also falsely assert that ZS has used and continues to use Synygy's software, confidential information and intellectual property.

- 27 -

24.     Moreover, the defamatory statements and implications falsely suggest and imply that Synygy was the market innovator and that ZS' products and services are knock-offs of products and services that Synygy developed.  The defamatory statements and implications also falsely suggest and imply that ZS infringed Synygy's intellectual property and improperly won over business and clients from Synygy as a result.

25.     Synygy's statements and implications about ZS are defamatory because they tend to harm the business reputation of ZS so as to lower ZS in the estimation of the community; naturally deter third persons from associating or dealing with ZS, and reduce demand for ZS' goods and services.

26.     Synygy's statements and innuendos about ZS are also defamatory because they imply that ZS has acted in a way that is contrary to proper, honest, and lawful business conduct.

27.     Synygy made these defamatory statements about ZS with the intention to harass ZS and tarnish the business reputation of ZS so as to lower ZS in the estimation of the community and in the marketplace for ZS' goods and services.

28.     Synygy adopted, published, disseminated, distributed, and repeated the defamatory statements about ZS with the intention to harass ZS and tarnish the business reputation of ZS so as to lower ZS in the estimation of the community and the marketplace for ZS' goods and services.

29.     Synygy's statements expressly refer to "ZS" by name and are collectively about ZS and its affiliates because they were named as defendants in Synygy's Amended Complaint in this case, as Synygy references the Amended Complaint in the press release and otherwise.

Furthermore, upon information and belief the recipients of the defamatory statements understood that the statements were intended to be applied to both ZS and its affiliates.

30.      In a letter to Stiffler and Synygy, dated November 20, 2009, ZS informed Stiffler and Synygy of the harm to ZS from dissemination of the statements about ZS.  *See* Exhibit E. Rather than taking prompt remedial action to mitigate the injury to ZS that disseminating the statements caused—and continue to cause—ZS harm, Synygy has repeated them, and has refused to retract them, to cease publishing them, or to take measures to prevent others from publishing them.

31.      ZS is neither a public official, nor a public figure, nor do Synygy's statements touch upon matters of public concern.

32.      Synygy made, adopted, published, disseminated, distributed, and repeated the defamatory statements about ZS with actual malice, knowing at the time that they were false, and/or with reckless or negligent disregard for their truth or falsity.

33.      Synygy's making, adoption, publication, dissemination, distribution, and repetition of the defamatory statements have caused, and continue to cause, ZS to suffer general harm because ZS' reputation actually has been adversely affected by the defamatory statements and their distribution.  Accordingly, ZS suffered, and continues to suffer, harm to its reputation, loss of good will, and reduced demand for its goods and services.

34.      Synygy's making, adoption, publication, dissemination, distribution, and repetition of the defamatory statements have also caused, and continue to cause, ZS to suffer special harm—including, but not limited to pecuniary losses, loss of potential revenue, good will, and business opportunities with current and prospective clients.

35.     Synygy's making, adoption, publication, dissemination, distribution, and repetition, of the defamatory statements about ZS have further injured the reputation of ZS in the marketplace and have harmed ZS' business, resulting in further pecuniary losses, loss of good will, and loss of potential business opportunities with current and prospective clients.

36.     Moreover, Synygy's making, adoption, publication, dissemination, distribution, and repetition of the statements constitute defamation *per se* because they accuse ZS of "deliberate and malicious misconduct" in its business practices.  In particular, the statements ascribe to ZS conduct that would adversely affect its fitness for the proper conduct of lawful business.

37.     Upon information and belief, the recipients of the defamatory statements about ZS understood, and continue to understand, the meaning of the statements to be defamatory.

38.     The defamatory statements about ZS were not privileged, and Synygy's publication, dissemination, distribution, and repetition of the defamatory statements about ZS were not privileged.

39.     To the extent the defamatory statements about ZS were privileged, any applicable privilege was abused.

40.     To the extent Synygy's publication, dissemination, distribution, and repetition of the defamatory statements about ZS were privileged, any applicable privilege was abused.

41.     Accordingly, ZS suffered, and continues to suffer, direct pecuniary losses and loss of good will as the result of Synygy's publication, dissemination, distribution, and repetition of the defamatory statements valued in excess of $150,000 exclusive of interest and costs.

**Count II:  Commercial Disparagement**

42.     ZS repeats the allegations set forth in all of the foregoing paragraphs of its

Counterclaims as though set forth at length herein.

43.     Stiffler's statements about ZS constitute disparaging statements of fact or opinion

about ZS' products, services, and/or business practices that are untrue and incorrect.

44.     Synygy's adoption, publication, dissemination, distribution, and repetition of the

statements about ZS constitute disparaging statements of fact that are untrue and incorrect.

45.     Synygy made, adopted, published, disseminated, distributed, and repeated the

disparaging statements, knowing that they were untrue and incorrect, or did so with reckless or

negligent disregard for their truth or falsity.

46.     Synygy knew or should have known that its making, adoption, publication,

dissemination, distribution, and repetition of these disparaging statements would likely result in

financial harm and pecuniary loss to ZS because current and potential customers would rely on

such public statements when deciding whether to purchase products and services from ZS.

47.     Synygy's intentional making, adoption, publication, dissemination, distribution,

and repetition of these disparaging statements were motivated by ill will toward ZS and are not

privileged under the law.

48.     Synygy's making, publication, dissemination, distribution, and repetition of these

disparaging comments have reduced the marketability of ZS' goods and services because current

and/or potential ZS customers actually relied on the truth of the statements in deciding not to

conduct business with ZS.

49.     Accordingly, ZS suffered, and continues to suffer, a direct pecuniary loss and loss of good will as the result of Synygy's disparagement valued in excess of $150,000 exclusive of interest and costs.

## Count III:  Violation of the Lanham Act

50.     ZS repeats the allegations set forth in all of the foregoing paragraphs of its Counterclaims as though set forth at length herein.

51.     Synygy's reiteration, adoption, publication, dissemination, and distribution of Stiffler's statements about ZS and Synygy constitute false and misleading descriptions and misrepresentations of fact about both ZS' and Synygy's products and services.

52.     Synygy's press release and wide-ranging distribution of the false and misleading descriptions about both ZS' and Synygy's products and services to various media outlets and over the Internet are commercial speech, advertisement, and/or promotion under the Lanham Act.

53.     Synygy admits in its Amended Complaint and Second Amended Complaint in this Case that ZS and Synygy are direct, commercial competitors.

54.     Synygy's publication, reiteration, and wide-ranging distribution of Stiffler's statements in a press release, through various media outlets, and over the Internet was designed to influence customers to buy Synygy's products and services and spurn ZS' competing products and services.

55.     Synygy's publication, reiteration, dissemination, and wide-ranging distribution of Stiffler's false and misleading statements actually deceived and/or tended to deceive ZS' current and potential customers into believing that ZS provides inferior products and services compared

to Synygy and that ZS engages in "deliberate and malicious misconduct" in its business practices by unlawfully using Synygy's software, intellectual property, and other confidential business information to compete with Synygy.

56.     Synygy's deception was material in that it was likely to influence customer's purchasing decisions.

57.     Both ZS' and Synygy's products and services described in the press release travel through interstate commerce.

58.     ZS has been injured by Synygy's deception through loss of sales and good will.


WHEREFORE, Counterclaim-plaintiff ZS prays that the Court enter judgment in its favor and against Counterclaim-defendant Synygy as follows:

(a)     Enjoin Counterclaim-defendant Synygy, Inc. from continuing to publish or disseminate the defamatory statements identified in ZS' Counterclaim, and from otherwise defaming or commercially disparaging ZS and its affiliates;

(b)     Award ZS general compensatory and consequential damages, including damages for loss of business relations, damages for loss of growth opportunities, damages for loss of company valuation, damages for loss of reputation and damages for loss of all benefits as a result of the actions of Counterclaim-defendant Synygy, Inc.;

(c)     Award ZS such punitive damages for the wrongful conduct of Counterclaim-defendant Synygy, Inc. as the trier of fact deems just and proper;

(d)     Grant ZS costs, disbursements, and reasonable attorneys' fees; and

(e)     Grant ZS such additional legal and equitable relief as this Court deems just and

proper under the circumstances.


Date:  May 23, 2011                              Respectfully submitted,

                                                 /s/ Diane Siegel Danoff
                                                 Diane Siegel Danoff
                                                 Joseph R. Heffern
                                                 Elisa T. Wiygul
                                                 Dechert LLP
                                                 Cira Centre
                                                 2929 Arch Street
                                                 Philadelphia, PA 19104-2808

                                                 *Attorneys for Defendant &*
                                                 *Counterclaim-plaintiff, ZS Associates, Inc.*

## **Certificate of Service**

I, Joseph R. Heffern, hereby certify that on this date, the foregoing document was filed electronically and is available for viewing and downloading from the ECF System.  The following counsel received service of the Notice of Electronic Case Filing:

Alan S. Fellheimer
John J. Jacko, III
Fellheimer & Eichen LLP
1800 John F. Kennedy Boulevard,
Suite 1400
Philadelphia, PA  19103

*Attorneys for Plaintiff*
*Synygy, Inc.*

William J. McDonough
Louis W. Schack
Michael C. Falk
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

*Attorneys for Defendant*
*Novo Nordisk Inc.*

Dated:  May 23, 2011          /s/ Joseph R. Heffern
                             Joseph R. Heffern

14064201.13