IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SYNYGY, INC. : CIVIL ACTION
: No. 07-3536
v. :
:
ZS ASSOCIATES, INC., et al. :

O'NEILL, J.                                                                                                                        July 15, 2013

## **MEMORANDUM**

This opinion addresses a motion by Novo Nordisk, Inc., ZS Associates, Inc. and ZS Associates International, Inc. to compel trade secret discovery (Dkt. No. 138), one of a number of motions now pending in this litigation between Synygy, Inc., ZS and Novo. Upon consideration of all briefs submitted with respect to the motion, oral argument on the motion and for the following reasons, I will grant the motion to the extent that it seeks to compel Synygy to provide a specific identification of the trade secrets that Synygy contends defendants misappropriated.

ZS and Novo move to compel Synygy to provide full and complete answers to certain interrogatories relating to Synygy's trade secret claims. See Dkt. No. 138-16 at ECF p. 2. Defendants ask the Court to compel Synygy's answers to

> include a specific identification of each trade secret that Synygy contends were misappropriated that is . . . particular enough so as separate the alleged trade secret from matters of general knowledge in the trade, of special knowledge of persons skilled in the trade, or over which Synygy does not claim trade secret protection (such as, e.g., information provided by Novo Nordisk Inc.).

Id. They also seek to compel Synygy to provide "(b) an identification of which defendant Synygy contends misappropriated each particular trade secret, and (c) an identification by Bates

number of any documents that contain each alleged trade secret and/or evidence misappropriation of each alleged trade secret." Id.

In response to defendants' motion to compel, Synygy asserts that "Synygy's Second Amended Complaint, interrogatory responses and witnesses' deposition testimony clearly set forth what Synygy contends to be its trade secrets and the basis for its claims." Dkt. No. 143 at ECF p. 3. Synygy argues that defendant's motion is "an effort to limit the scope of Synygy's trade secrets and burden Synygy with unreasonable discovery obligations" filed in an effort "to pursue what are essentially summary judgment arguments . . . ." Id.

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A party may serve interrogatories that relate to any matter within the scope of Rule 26(b). Fed. R. Civ. P. 33(a). The party answering the interrogatories "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). "Each interrogatory must, to the extent it is not objected to, be answered separately *and fully* in writing under oath." Fed. R. Civ. P. 33(b)(3) (emphasis added).

> A party who has responded to an interrogatory . . . must supplement or correct its . . . response: (A) in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1). Where a party has received discovery responses that are incomplete or evasive, Rule 37 of the Federal Rules of Civil Procedure permits that party to request a court order compelling additional disclosure or discovery. Fed. R. Civ. P. 37(a)(4).

2

As part of its case in chief, a trade secret plaintiff must identify its trade secrets "with a reasonable degree of precision and specificity" that is "particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." Dow Chem. Canada, Inc. v. HRD Corp., 909 F. Supp. 2d 340, 346 (D. Del. 2012) (citation omitted); see also Knights Armament Co. v. Optical Sys. Tech., Inc., 254 F.R.D. 463, 467 (M.D. Fla. 2008) ("It is axiomatic that a party may not assert a cause of action for misappropriation of trade secrets without identifying for the opposing party the trade secrets at issue.); AutoMed Techs., Inc. v. Eller, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ("It is not enough to claim that defendants will be able to learn the details through discovery. Plaintiff must provide them now so we can evaluate the relevance of plaintiff's discovery and address any objections."). "[W]hat is clear is that general allegations and generic references to products or information are insufficient to satisfy the reasonable particularity standard." L-3 Comms. Corp. v. Jaxon Eng'g & Maint., Inc., No. 10-02868, 2011 U.S. Dist. LEXIS 117757, at *5 (D. Colo. Oct. 12, 2011); see also Hill v. Best Medical Int'l, Inc., Nos. 07-1709, 08-1404, 2010 WL 2546023, at *4 (W.D. Pa. June 24, 2010) (citation and internal quotation omitted) (holding that where Best Medical sought to assert a counterclaim of misappropriation of trade secrets against Hill, Best Medical's "general allegations and generic references to products [were] insufficient to satisfy [its] burden of identifying its misappropriated trade secrets with 'reasonable particularity,' especially in light of the extensive discovery that [it] ha[d] obtained . . . ."); Knights Armament, 254 F.R.D. at 467 ("[I]t is insufficient to describe the trade secrets by generic category . . . . Rather, [the plaintiff] must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data."). "[S]pecificity is required before the court so that the defendant can defend himself adequately against claims of trade secret

misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation." Sit-Up Ltd. v. IAC/InterActiveCorp., No. 05-9292, 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008).

In response to defendants' motion, Synygy contends that it has "repeatedly stated what it considers to be Synygy's trade secrets as well as the factual circumstances and documents that serve as the basis for Synygy's trade secret misappropriation claims." Dkt. No. 143 at ECF p. 5. Synygy asserts that its "Second Amended Complaint clearly set forth the basis for [its] trade secret claims, including the defined set of software, services, and related deliverables Synygy provided to Novo during their business relationship." Id. at ECF p. 8. The paragraphs cited by Synygy do not, however, specifically identify which components of its software, services or related deliverables constitute trade secrets. See Dkt. No. 85 at ¶¶ 17-20, 38-41, 54. Nor do the "measures that Synygy takes to protect its trade secrets, such as the use of employee confidentiality and non-competition agreements and strict confidentiality provisions in client contracts" provide any insight into the substance of the trade secrets requiring protection. Dkt. No. 143 at ECF p. 8, citing Dkt. No. 85 at ¶¶ 23-24, 50.

Synygy also contends that it has provided adequate and "numerous [interrogatory] responses identifying the trade secrets that were misappropriated by Novo and ZS." Dkt. No. 143 at ECF p. 11. Synygy explains that in its Answers and Objections to Novo's Second Set of Interrogatories, it stated that "it does *not* claim trade secret protection over the Novo Nordisk logos, trademarks, trade names, or information provided by Synygy to Novo Nordisk." Id. at ECF p. 9 (emphasis in original). It claims that it "further identified its trade secrets in the Deliverables by stating that it 'claim[s] trade secret protection over all other aspects of the

4

Deliverables including, without limitation, the text, formatting, graphics, design, organization, selection and arrangement of information.[']" Id., quoting Dkt. No. 143-5 at ECF p. 4. It should be noted that in its Answers and Objections to Novo's Second Set of Interrogatories, Synygy further stated that "[i]nvestigation and discovery [were] continuing." Dkt. No. 143-5 at ECF p. 4. Synygy has now had the benefit of fact discovery.

Synygy explains that in its response to Interrogatory 1 of ZS's First Set of Interrogatories, it stated that the allegedly misappropriated trade secrets included "the Synygy Software Macros, the Synygy Software Products, the Synygy Reports and the Deliverables, as those terms are described in the Second Amended Complaint." Dkt. No. 143, citing Dkt. No. 143-6 at ECF p. 4. Synygy notes that it "properly pointed out that it was unable to determine the full nature and extent of the trade secrets misappropriated by Defendants" because "no documents had been produced by ZS and Novo at that point." Dkt. No. 143 at ECF p. 10. That is no longer the case.

Synygy also cites its response to ZS's Second Set of Interrogatories, in which it explained that its claims regarding ZS and Novo's "(1) kn[owledge] or [ ] reason to know that the alleged Synygy trade secret and confidential information were acquired by improper means and otherwise misappropriated and (2) unlawfully disclosed or used the trade secrets and confidential information," were based on "receipt and review of the ZS deliverables that Synygy received from Novo during the 2007 sales process, the Synygy/Novo contract, and the March 24, 2011 Agreement Regarding Rule 19 Motion and Second Amended Complaint." Dkt. No. 143 at ECF p. 10-11. Synygy goes on to explain that its response "further incorporated its response to Interrogatory No. 9, which discloses in detail the basis for Synygy's trade secret claims, including the terms of the Synygy-Novo contract, Novo's provision of Synygy's confidential and proprietary materials to ZS, the evidence Synygy discovered in ZS's deliverables to Novo, as

5

well as additional evidence of ZS and Novo's willful conduct with respect to Synygy's confidential materials, which were uncovered during discovery." Id. at ECF p. 11, citing Dkt. No. 143-2 at ECF p. 2-4. In its response to Interrogatory 9, however, Synygy does not specifically identify the materials it claims that defendants misappropriated. Instead, it refers to the "Synygy Materials," defined as "electronic materials which were created in whole or in part Synygy . . . as part of the incentive compensation services Synygy provided to Novo." Dkt. No. 143-2 at ECF p. 3. Synygy concludes its response to Interrogatory 9 by stating that "in accordance with Fed. R. Civ. P. 33(d) the answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting or summarizing the records produced by Defendants (including electronically stored information), and the burden of deriving the answer will be substantially the same for either party. Dkt. No. 143-2 at ECF p. 4-5.

Synygy also asserts that it "has produced numerous witnesses that have testified regarding Synygy's confidential information, including the reports and software macros at issue." Dkt. No. 143 at ECF p. 11. Synygy contends that its "witnesses have repeatedly testified that Synygy considers the reports and associated software macros it delivered to Novo to be highly confidential trade secrets, as well as Synygy's report design philosophies, processes, and practices embodied in those reports." Dkt. No. 143 at ECF p. 12. It goes on to state that its "witnesses have also testified that Synygy's report designs contain trade secrets outside of the numerical data and text contained in those reports, and that numerous complex design guidelines and principles, as well as years of institutional knowledge and experience, are incorporated into the design of a Synygy report." Dkt. No. 143 at ECF p. 12. Synygy further explains that its "confidential report design philosophies, institutional knowledge, and experience of its highly trained employees, result in a unique 'look and feel' to Synygy's reports that is treated as

6

confidential and differentiates Synygy in the marketplace." Dkt. No. 143 at ECF p. 13. Synygy concludes that its "witnesses have been questioned in detail regarding Synygy's trade secrets, especially with respect to the text, formatting, graphics, design, organization, selection, and arrangement of information in the reports that Synygy designed and provided to Novo . . . ." Id.

Courts have obligated plaintiffs identifying their claimed trade secrets with a level of detail similar to that provided by Synygy in the above examples to define their trade secrets with more particularity in advance of trial on their misappropriation claims. For example, in Xerox Corp. v. International Business Machines, Corp., 64 F.R.D. 367 (S.D.N.Y. 1974), the Court considered objections to the report and recommendations of a special master who had been appointed to recommend resolution of certain discovery disputes. The special master had instructed Xerox to "specify that data and information which forms the bases of its cause of action" including its claim for misappropriation of trade secrets. Id. at 371. The Court found that Xerox had not complied with the special master's instruction, explaining:

> At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are. Thus, after nearly a year of pre-trial discovery, Xerox should be able to identify in detail the trade secrets and confidential information alleged to have been misappropriated by IBM. Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether Xerox can undertake a meaningful discovery program, which includes its attempt to trace the flow of secrets and confidential information through IBM, without first identifying which trade secrets and what confidential information IBM has misappropriated.

Id. at 371-72.

Similarly, in Fast Food Gourmet, Inc. v. Little Lady Foods, Inc., No. 05-6022, 2007 WL 2156665, at *8-12 (N.D. Ill. July 26, 2007), ruling on a motion in limine, the Court decided to

7

exclude information the plaintiff had sought to use in its case regarding certain components of its alleged trade secrets, finding that the plaintiff had not sufficiently disclosed those components during discovery. Id. at *8-12.[1] The Court noted that

> [i]nstead of simply identifying those components, [the plaintiff] provided a list of documents that were claimed to contain the information that was sought. The patchwork of documents was not exactly illuminating and to a large extent required the defendants to guess what the trade secrets were: were they comprised of the many elements mentioned in the more than 30 documents, or only some? The inevitable element of speculation could and should have been avoided.

Id. at *12.

Arguing that it is "implausible that Novo and ZS are now unable to determine what Synygy trade secrets are contained in the materials that Novo and ZS admittedly misappropriated and used," Synygy cites the "limited universe of trade secrets at issue." Dkt. No. 143 at ECF p. 8. Given this "limited universe of trade secrets" it should not unduly burden Synygy to more specifically identify them for defendants. Synygy "kn[ows] what its trade secrets consisted of; the defendants did not – at least they did not know what the plaintiff would claim to be the protected information." Fast Food Gourmet, Inc. v. Little Lady Foods, Inc., No. 05-6022, 2007 WL 2156665, at *9 (N.D. Ill. July 26, 2007). Now that fact discovery has concluded, defendants, as in Xerox and Fast Food Gourmet, should not be required to "guess" what Synygy's trade secrets are. Accordingly, I will order Synygy to serve defendants with sworn supplemental answers to defendants' interrogatories setting forth with reasonable particularity the trade secrets that Synygy claims were misappropriated.

---

[1] The defendants in Fast Food Gourmet filed objections to the Magistrate Judge's decision, but did not object to the portion of his decision addressing the two components referenced in the above discussion. See Fast Food Gourmet, Inc. v. Little Lady Foods, Inc., No. 05-6022, 2007 WL 30592944 (N.D. Ill. Oct. 18, 2007).

8

Although I will not at this time require Synygy to identify by Bates number all documents that contain each alleged trade secret and/or evidence misappropriation of each alleged trade secret, Synygy's supplemental answers shall be sufficiently specific so as to allow defendants to identify allegedly misappropriated trade secrets contained in documents produced in this action. Synygy's supplemental answers should, for example, include references to examples of specific documents that include the specifically identified trade secrets.

An appropriate Order follows.