IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNYGY, INC. | : | CIVIL ACTION |
| | : | No. 07-3536 |
| v. | : | |
| | : | Consolidated with |
| ZS ASSOCIATES, INC., et al. | : | Civ. A. No. 10-4274 |

O'NEILL, J.                                                            July 30, 2015

## MEMORANDUM

Now before me is a motion by defendants ZS Associates, Inc., ZS Associates International, Inc. and Novo Nordisk, Inc. (collectively, defendants) seeking leave to serve a substitute expert report. (Dkt. No. 203). On September 3, 2013, defendants served a report by Richard Gering, their damages expert, in rebuttal to the report of plaintiff Synygy Inc.'s damages expert. Gering also supplied a report on ZS' damages in support of ZS' defamation and related claims against Synygy which ZS served on July 19, 2013.[1] Defendants seek "leave to serve a substitute report that would be limited to the subject matter and theories espoused in Mr. Gering's two reports . . . ." Dkt. No. 206 at ECF p. 6.

Counsel for defendants "learned that their damages expert, Richard Gering, never received a PhD in economics, contrary to statements made in his reports and his curriculum vitae." Dkt. No. 203 at ECF p. 6. They assert that they "heard a rumor for the first time that Mr. Gering had never received a PhD" on December 16, 2014. The rumor was confirmed when, "later that week . . . counsel received a call from the CEO of Gering's former employer . . . ." Id. at ECF p. 9. On December 24, 2014, defendants' counsel contacted plaintiff Synygy Inc.'s counsel about Gering's fabricated PhD and requested that Synygy consent to substitution of a new expert. Id. Counsel for Synygy refused to consent. Id. As a result, on January 1, 2014,

---

[1]   Synygy did not file a rebuttal report to either of Gering's reports.

defendants filed the instant motion.  In their motion, they seek permission to substitute their expert upon any denial of the summary judgment motions filed in Civil Action No. 07-3536 and the consolidated case Civil Action No. 10-4274.  I have denied those motions in part and granted those motions in part.  See Dkt. Nos. 207, 208, 211, 212, 215 and 216 (in Civ. A. No. 07-3536) and Dkt. Nos. 41 and 42 in Civ. A. No. 10-4274.  Accordingly, I will now consider whether it is appropriate to allow defendants to substitute their expert witness.

In opposing defendants' motion Synygy contends that "[d]efendants should not be permitted to name a new expert at this late stage simply because they are afraid that his credibility will be questioned on cross-examination." Dkt. No. 205 at ECF p. 5.  Synygy argues that "[d]efendants have not cited a single case where a party was permitted to replace an expert witness, who was otherwise available to testify, because the party developed concerns about that expert's credibility." Id. at ECF p. 6.  Synygy contends that it would be prejudiced if substitution is permitted because "[a]llowing another expert report to be submitted at this late date would, in effect, be giving [d]efendants a 'second bite at the apple' to attempt to clear up any flaws in Mr. Gering's opinions." Id.  Notably, Synygy does not argue that defendants were not reasonably diligent.  Nor does Synygy argue that, once Novo and ZS became aware of Gering's lack of a PhD, they failed to bring this issue promptly to Synygy's and the Court's attention.

Defendants contend that they "are not seeking a 'better' expert and they have no 'buyer's remorse' about the substance of Mr. Gering's conclusions." Dkt. No. 206 at ECF p. 6.  Indeed, they contend that they have "committed to limiting a substitute report to the subject matter and theories espoused in Gering's earlier reports" "because Mr. Gering's conclusions and methodology are completely sound." Id. at ECF p. 6-7 (internal quotations omitted).  Defendants

assert that "[f]ar from seeking 'better' testimony, ZS and Novo simply want to avoid cross examination on a collateral matter that Synygy's counsel have made it clear they want to exploit to try and impugn the substance of Novo's and ZS' damages positions." Id. at ECF p. 7. Defendants argue that "if Mr. Gering were to testify at trial, his credibility problem would cause Novo and ZS to suffer significant prejudice." Dkt. No. 206 at ECF p. 5 (citation and internal quotation omitted).

Defendants' motion is governed by Rule 16(b) of the Federal Rules of Civil Procedure. See Eichorn v. AT&T Corp., 484 F.3d 644, 650-51 (3d Cir. 2007) ("This Court and others have frequently upheld a trial court's exercise of discretion to deny a party's motion to add experts or other fact witnesses after the close of discovery or after a deadline in a scheduling order."). Rule 16(b)(1)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(1)(4). "Good cause" under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." Hildebrand v. Dentsply Int'l, Inc., 264 F.R.D. 192, 198 (E.D. Pa. 2010). "Although the existence of prejudice to the party opposing modification may also be considered, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." U.S. ex rel. Agate Steel, Inc. v. Jaynes Corp., No. 13-1907, 2015 WL 1546717, at *1 (D. Nev. Apr. 6, 2015) (citation and internal quotation omitted) (finding there was good cause to allow substitution of an expert where, due to the deterioration of their relationship, "American Steel and its expert are currently in arbitration against one another, making it unfeasible for American Steel to continue to rely on Mr. Hafeez in this case").

I find that there is no reason to doubt defendants' diligence. As defendants point out, "Mr. Gering has testified as a damages expert in dozens of important intellectual property and

other cases over the last two decades." Dkt. No. 203 at ECF p. 8. "Although the Court agrees that a party should investigate the background of a potential expert witness, this Court doubts that it is general practice for attorneys to contact universities to obtain evidence that an expert received a degree." U.S. ex rel. Suter v. Nat'l Rehab Partners, Inc., No. 03-15-S-BLW, 2006 WL 3531647, at *1 (D. Id. Dec. 6, 2006). Accordingly, in Suter, the Court found that the plaintiffs acted with sufficient diligence where they "learned for the first time during [their expert's] deposition that he did not possess a Masters Degree as suggested in his Curriculum Vitae" and sought to substitute their expert witness "because [his] inaccurate CV would make him a dishonest witness." Id. Here, Gering's decision to fabricate his educational credentials is not a situation that defendants created. It puts defendants in the same position as the plaintiffs faced in Suter. The first line of the CV which Gering attached to his expert reports states clearly "Ph.D., M.A. in Economics, University of Maryland, Concentration: Public Finance, Industrial Organization." See Dkt. No. 203-1 at ECF p. 2. When defendants discovered that Gering had falsified his credentials, they promptly informed Synygy.

Synygy suggests that a finding of good cause is unwarranted because, through substitution defendants could "clear up any flaws in Mr. Gering's opinions." Dkt. No. 205 at ECF p. 6. But defendants make clear that they believe "Mr. Gering's conclusions and methodology are completely sound" and that they "simply want to avoid cross examination on a collateral matter that Synygy's counsel have made it clear they want to exploit to try and impugn the substance of Novo's and ZS' damages positions." Dkt. No. 206 at ECF p. 6-7. Here, as in Suter, defendants "state that they do not intend to change the analysis; they simply intend to change the source of the analysis to a more honest one." Suter, 2006 WL 3531647, at *2. They explicitly represent that any new expert report "would be limited to the subject matter and

theories espoused in Mr. Gering's two reports." Dkt. No. 203 at ECF p. 6-7. Defendants "are not seeking to give their expert the last bite of the apple, but instead have fully justified obtaining a new expert to provide a fresh report in view of" their discovery that Gering had falsified his academic credentials. Palatkevich v. Choupak, No. 12-1681 2014 WL 5463371, at *2 (S.D.N.Y. Oct. 22, 2014). "[T]he Court has no reason to conclude that [defendants] ha[ve] acted in bad faith or that [their] present predicament is the result of deliberate strategy . . . ." In re Zoloft (Setraline Hydrochloride) Prods. Liab. Litig., No. 12-2342, 2015 WL 115486 at *2 (E.D. Pa. Jan. 7, 2015).

Defendants do not ask for and nor will I "allow a carte blanche substitution. The purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a better expert." Agate Steel, 2015 WL 1546717, at *2. Any new expert report "may not provide an opinion that is contrary to or inconsistent with Mr. [Gering's] opinion. . . . While the opinion need not be identical, it is reasonable to limit the new expert to findings that are substantially similar to those presented by Mr. [Gering]." Id.; see also Suter, 2006 WL 3531647, at *2 (finding that the defendants had not "shown that they w[ould] be substantially prejudiced by allowing [the p]laintiffs to substitute their expert" where the "[p]laintiffs state[d] that they d[id] not intend to change the analysis," but that "if [the p]laintiffs t[ook] advantage of the opportunity to substitute their expert by completely changing their expert analysis, the Court w[ould] be open to a motion by [the] Defendants").

Certainly a substitution will delay this case, but not sufficiently to require that I deny defendants' motion. Defendants ask for only four weeks to serve their substitute report and Synygy may take the expert's deposition anytime thereafter. Given the lengthy history of this

case, the moderate delay that will be caused by permitting substitution of defendants' expert hardly qualifies as substantial prejudice.  Further, as defendants contend, "since the substitute reports will cover the same ground, Synygy's time would have been expended anyway and its studying of the theories raise[d] will apply to the substitute reports."  Dkt. No. 206 at ECF p. 7.

Synygy argues that it "would be prejudiced by the additional attorneys' fees and expert witness costs associated with having to review any new opinion issued by the substitute expert, as well as for the preparation and taking of another deposition."  Dkt. No. 205 at ECF p. 7.  "[A]lthough there is some prejudice to [Synygy], in that it will be put to the additional expense required to litigate the admissibility of [the substitute expert's] testimony, this prejudice is not of a character sufficient to warrant denial of the motion."  In re Zoloft (Sertraline Hydrochloride) Products Liab. Litig., No. 12-MD-2342, 2015 WL 115486, at *2 (E.D. Pa. Jan. 7, 2015).  In the unlikely event that the substitution of defendants' expert necessitates expenditure of *significant* additional attorneys' fees that would not otherwise have been required, Synygy may file a request for "the reasonable added expert fees attributable to having" to address the substituted expert's report.[2]  Palatkevich, 2014 WL 5463371, at * 2.

An appropriate Order follows.

---

[2] "The Court expresses no opinion herein whether attorney's fees will be awarded." Agate Steel, 2015 WL 1546717, at *2 n.5.